Your Honor, may I please the Court? My name is George Lee. I represent the appellants in this matter, and I've requested to reserve three minutes for rebuttal. I'll try to watch the clock for you, but you can see the clock there as well. Your Honor, the case before the Court today is appropriately, whether or not this case is moved for all purposes. The case as it was presented to the District Court on May 20, 2020, involved a vastly different question. The question before the District Court on that day was whether or not, by virtue of superseding County orders that allowed for or those superseding orders then mooted plaintiff's claims for injunctive relief. That is the issue that the parties then focused on with supplemental briefing and with further argument and discussion on that. So context is very important in considering whether or not the plaintiff's claims of nominal damage has been waived. Let me ask you a question, Your Honor. When I read the transcript of the proceedings in court that day at the District Court, and there was a discussion about the supplemental briefing, and there was some kind of a — it was an odd — not an odd exchange, but there was an exchange, and the judge said, well, I want you to brief, I want you to tell me, or tell us, why this case is not moot. Something — words to that effect. And he used the word case. He didn't say, I want you to tell me why these claims for prospective, injunctive, and declaratory relief are moot. He said case. So was there any confusion about that? Yes, Your Honor. What was the confusion? Because the focus of the supplemental briefing was really intensively focused on this very specific question as to whether or not firearm deliveries could be — transactions could be conducted curbside delivery. And we spent a lot of time explaining to the District Court — correctly, I believe — why that was simply not feasible and, if not illegal, under California law. So we didn't consider the question of whether or not the case was moot at all, because in the first instance, those superseding orders which allowed for curbside delivery did not moot the case at all. So there's really no reason to focus on whether the entire case was moot. But I take Your Honor's point because while we briefed this case, we looked at the record, we saw what the District Court said, and it did strike me at odds with what I remember occurring below. The issue of supplemental briefing was really geared to allow the District Court to consider — which I think the District Court did earnestly consider — whether or not this outdoor curbside delivery was an option. But then you get all the way down. Okay, take your point. Maybe you had some different conception of what was the precise issue. But then there's not even a motion for reconsideration, such as, excuse me, we have nominal damages here. You can't dismiss our case. So the next — the only time we see nominal damages is when the case is up on appeal. Well, it should — and I've thought about that question, Your Honor. I'm sure you have. The — it must be remembered that the reason why the District Court — there's an inconsistency. The inconsistency arose when the County of Alameda later filed their own motion to dismiss, and the court found that the claims were not moot and that there was a claim for nominal damages, which kept the case alive. Now, there's an inconsistency there and obviously a tension there. It was not until five months later when the — when the District Court issued its order on the County of Alameda's motion to dismiss that it — we finally learned that the court considered the issue to be waived. So this was five months after the — the order at issue. It was five months after the defendants in this case had been dismissed. And I think there was — and that was the first instance that we had. It was buried in a footnote in the court's decision in which there was an allegation of waiver. It was really — given the fact that motions for reconsideration are generally disfavored, they're to be used fairly — You know, I know all of that. But you're about to have your whole case go down the reconsider or disfavor. But if the judge has made a legal error, that's precisely the kind of motion that would get attention. So I guess my difficulty is you now have notice about this and you know that this issue is on the table, but nothing happens in the District Court. So the question for us is why we should rejuvenate that claim on appeal. At the time, there was — I don't — I think it would have been futile to convince the District Court that — the District Court — there was — found an inconsistency and clearly wanted to — maybe the best, most polite way to put this is to flow — let that inconsistency flow through to the plaintiffs by some suggestion of waiver. I think it would have been futile to convince the District Court that — at that point, that we had not waived the claim. It's all speculation, but the Ninth Circuit had long recognized that nominal damages would save a case from mootness. Correct. There was Bernhardt, where we considered it on our own, and the panel there just pointed out, look, they could amend the complaint to allege a claim for nominal damages. And — But let me ask you, you know, when you look at Bernhardt and you look at this case, then when I looked at the complaint in this case, there is a claim for nominal damages. It's right there. It's, in bold letters, nominal damages. Now, does — when we talk about waiver, was the District Court talking about waiving your claim for nominal damages, or was he talking about waiving an argument? I believe that the District Court was talking about waiving an argument, but said that we could not assert the claim by dismissing — by insisting on dismissal of the defendants in this case. True, there was Ninth Circuit authority, but I think that our position regarding the fact that nominal damage is a bona fide claim was vindicated later. Yes, but — I mean, so why isn't your argument, look, we alleged a proper claim for nominal damages. It's right there in the complaint. How can we — how can you say on the one hand that we waived an argument without waiving the claim for nominal damages? Exactly. Well, we did — I don't want to make your argument for you, but — Right, and we're asserting that we have never waived the — we asserted the claim. It's right there in the complaint. The District Court acknowledged it. And our position was vindicated a year later, or in March of 2021, when the Supreme Court issued Uzu-Egbenam and elevated nominal damages to the position of a bona fide claim standing on its own. So it's — Well, we had already done that. I mean — Yeah, that was — Ninth Circuit had already done that. Right. It was pretty clear in our case law at the time — when this case was litigated. We had already recognized that. So we think that trying to flow the — pass the error onto the plaintiffs by a claim of waiver, I think, misses the mark. And we didn't waive the claim. The District Court, I think, clearly overlooked the issue in its haste to dismiss the case  One more point, though, to Your Honor's original question to me about, didn't the District Court say in the colloquy, why is your case now moot? And we want supplemental briefing on that. That was at odds, really, with my own memory of — to what we were discussing. And I was really puzzling over the inconsistency between that language appearing in the transcript and my own memory. And in preparing for this argument, I looked at the District Court's order of June 2, which is in the excerpts of record at page 13. And there it is in black and white. In the District Court's order, which dismissed the defendants, the court said that it had curbside retail sales and in two counties, delivery retail, mooted plaintiff's claims. That's right there in black and white. That — I think — No, I — you know, I — the other thing, but when I read this — when I read that transcript, it was pretty clear to me, at least, that all this — this whole question of mootness arose, as you said at the outset, in the context of whether or not the change to allow curbside pickup and whatnot mooted the claim for an injunctive relief. Because as I recall, the District Court initially denied a temporary restraining order and set the matter down for a preliminary injunction. There was a status conference in between when it was brought to his attention that there had been a change in policy, if I'm not mistaken. Correct. And it raised a question in his mind whether or not the claims were moot. Now, you know, I do know that a district judge — because I, you know, I was there for quite a while — you can easily slip up, and rather than saying prospective claims or claims, you can easily just say, well, why isn't this case moot? Yes, and that's how it sort of flowed, Your Honor. It was — not to put any blame, but it was over Zoom. Right. And when I looked at — when I saw that that was actually what the court had ordered, supplemental briefing on that specific issue, I do feel a little bit vindicated by having read that. I think you're somewhat vindicated, but I'm thinking if the court is worried that this case — well, the claim with respect to the curbside delivery is going to be moot, why you wouldn't put in there, but the case is not moot because we still have nominal damages. However you rule on the curbside delivery issue, look at our complaint. We clearly allege nominal damages. So that, you know, I think the technical claim is forfeiture rather than waiver, but I think that I could only find one case where on appeal we, you know, really entertained this argument and found that it wasn't appropriate to bring up. Have you found other — have you found cases where we're in this predicament that we're in now? Well, I mean, we cited to the Bernhardt case, which is — it did involve a sua sponte dismissal and revival of a case allowing for the assertion of nominal damages, which I think is close. But, again, to get back to the — what was happening, the context is everything, I think. And as Judge Pai has noted, it's easy in the heat of an argument to say things like why is your case moot when — and then later on to order a supplemental briefing on a very specific question. I do want to give the district court real credit here. I think when we presented the question of whether or not outdoor delivery of firearms was feasible, I do think that the district court really earnestly was looking into that question to determine whether or not this really did solve the problem. Then when the counties later on, two weeks later, I believe, said everything's open for retail, I think the district court said, okay, well, problem solved. Problem solved for everybody and simply cut to the chase and dismissed the case. I honestly think that that's what happened. But in its haste to do that, I think it overlooked the fact that we had a live claim for nominal damages. So on the question of a sua sponte dismissal, we've cited two cases, Bernhardt and Dodd Spokane, which say that when a district court dismisses a case sua sponte, it's treated for all intents and purposes as a 12B6 type of motion to dismiss. So under that standard and reviewing this de novo, I think it's pretty clear that we did assert the claim for nominal damages. If your honors look to the complaint, it's right there. The district court acknowledged it. Under that standard, clearly we had asserted the claim. I think it takes much more. Waiver is an intentional relinquishment of a right as opposed to forfeiture, as your honors noted. We never said we're waiving anything. And I agree with that. I mean, there's nothing affirmative. It's this kind of sub silencio. You didn't do anything to fix what the district court did. But I agree you didn't take any affirmative action. And moreover, the underpinning behind waiver is to prevent a party from taking advantage of an inconsistent position or from sandbagging the other side and raising arguments that they didn't raise previously. Here, there's no prejudice to the counties or the defense, because it's not like they raised an argument that they didn't get to address. The, in essence, the counties didn't have to make an argument at all. They just sat. They announced an intention that they would be making a motion to dismiss. But before we even got to that stage, the district court had just went ahead and dismissed the entire case. So the defense really can't claim that they were prejudiced or sandbagged in some way by having us make an argument that later they had to deal with in some inconsistent fashion. So I think the underpinning behind the concept of waiver is the issue. Can I ask you one last question before you sit down? I know you want to save some time for rebuttal. But other than nominal damages, I mean, if you didn't have that claim for nominal damages, the case would be moved under Brock 2. Is that right? I would argue otherwise. Pretty hard argument. I understand it's a hard argument. I understand it's an uphill battle in light of the reversal of fortune with the UNBOC decision. But I think that Brock is distinguishable for a number of reasons. First and foremost, there was, in Brock, there was a real commitment to reopening the schools. I believe that counsel for the state guaranteed, I wouldn't say guaranteed it, but reaffirmed the governor's commitment to reopening schools. And and clearly there was a clear and unequivocal commitment to that. And secondly, there was legislative sunsetting provisions in that case, which made the policy change entrenched and difficult to to change. In this case, the counties have always given themselves the out by saying we're going to relax our restrictions. But bear in mind that if the COVID conditions change, we could change our mind at any minute. So that clearly under the Rose Brock factors, which I don't think we need to get into unless your honors really wish to, that that fails to meet that test. And that's why Brock is distinguishable for those reasons. Let me ask you if you're correct that you have a nominal damages claim that survives, would the damages period basically be from the time of the county's order until it was the time it was lifted? I imagine that that would be the case, that the nominal damages would be really really to to address to redress the constitutional injury, whether, you know, the length of time was several weeks to 81 days, as we've suggested. I, you know, I think that's something that we can hash out in the district court. But yes, you'd have to go back then on the constitutional injury, because here, of course, on the injunction was is a little bit of a different standard. So you'd be kind of back to square one in a regular trial situation. Is that right? Correct. But I think we still get to make the point that one doesn't just get to overlook these constitutional interests when when issuing broad shutdowns in this regard. I think you want to save the remaining time. Thank you so much. Thank you. May it please the court. I'm lead Deputy County Counsel Melissa Kenioklis, and I represent the defendants, which include the counties of Santa Clara, San Mateo and Contra Costa, and the cities of San Jose, Mountain View, Pacifica and Pleasant Hill. In the early days of the COVID-19 pandemic, when little was known about a novel coronavirus that was sickening and killing people, the health officers for defendant counties were the first in the nation to issue shelter in place orders to protect the public from severe illness and death. Shortly thereafter, plaintiffs sued, alleging that the orders violated their constitutional rights to purchase firearms and ammunition. By the time the district court denied plaintiffs motion for a preliminary injunction, the public health orders had lifted the restrictions on retail businesses. The district court correctly determined that plaintiffs' claims for injunctive and declaratory relief are moot and that they waived their request for nominal damages. So now you wait a little. Can I stop you right there? You just said they waived their request for nominal damages. They waived their claim for nominal damages. Where in the record does it show that? Well, the... So if you go to the complaint, they lay out the facts, and the typical way a complaint is alleged. They set forth their claims for relief, specific claims, and then they have a prayer for damages, for relief, specific relief. And right there it says nominal damages. Where in the proceedings does it show that they waived their claim for nominal damages? So at the conclusion of the hearing on the motion for a preliminary injunction, as Your Honor pointed out when my colleague was arguing, the Court asked for supplemental briefing and specifically said that the plaintiff should state, here is why the case is not moot, and asked the defendants, you tell me why the case is moot. So the parties submitted supplemental briefing on that argument, and plaintiffs failed to assert in their supplemental brief that their claim for nominal damages kept their case alive. Let me just go back to one other thing you said at the outset. You said the district court said that they waived the nominal damages claim? The district court ruled that, yes. And where does it say that in those words? It says that in a footnote on the, when the court dismissed the county of Alameda. Alameda. And it's in the motion, order on the motion to dismiss. But plaintiffs did miss opportunities. But at that point, was the Santa Clara still alive, so to speak? Well, at that point, the court sua sponte dismissed the defendants in its order denying their motion for a preliminary injunction. Plaintiffs actually sought clarification of that order. So when they sought clarification of the district court's intent in sua sponte dismissing the defendants, at that time, the plaintiffs did not bring to the district court's attention their claim for nominal damages. So in their supplemental briefing, they missed an opportunity to mention their claim for nominal damages. In their request for clarification on the court sua sponte dismissal of the defendants, they missed an opportunity to bring to their court's attention their claim for nominal damages. And as Your Honor pointed out previously, plaintiffs did not request reconsideration or file a motion to amend the judgment. So they missed several opportunities to bring this to the district court's attention. So their failure to act equates to a waiver of their claim for nominal damages? Yes, Your Honor. Or as your colleague pointed out, a forfeiture of their claim for nominal damages. It was incumbent on plaintiffs having multiple opportunities to bring this issue to the court's attention and they failed to do so. It's not up to the district. Why doesn't, as your opponent, as appellate counsel was just arguing, Mr. Lee, what do we do with the context in which this all arose? And it's pretty clear when I read the transcript and looked at the excerpts of record that what was going on was they had moved for a, they started off with a TRO and the district court denied it, set it down for a preliminary injunction hearing and it was quite clear that what was going to take place was a hearing on a preliminary injunction. And then there was change in policy and the district court said, hmm, this might moot any need for a preliminary injunction because they're going to get everything they need. They're back to conducting business. Maybe not exactly the same way, but they can conduct business. And that's the context in which the district court was concerned about the change in policy and whether that amounted to mootness of the claims, right? He didn't, at that point, the underlying, there was no motion before the district court at that time under 12b-6 challenging whether or not the plaintiff stated a constitutional claim sufficient to support their 1983 actions. Isn't that right? That's correct, your honor. Right. So why doesn't that context have some meaning to the way in which the district court was briefing? The context is relevant, but the inquiry shouldn't end there because as I mentioned, plaintiffs had multiple other opportunities besides just their supplemental brief where Mr. Lee pointed out their focus was on curbside delivery and outdoor retail. But before the court even ruled on the motion for a preliminary injunction, the orders had fully opened as of early June and plaintiff's motion for an administrative or clarification of the court's order occurred on June 12th. And the judge ordered the defendants dismissed on June 18th. So at the time, the plaintiff sought clarification from the district court. We were beyond curbside delivery. The retail businesses were open. The firearms retailers had no impediment at all in engaging in firearms retail. So at that time, there was yet another opportunity for plaintiffs to assert that their claim for nominal damages kept their case alive, and they failed to do so. What do you do with what's your How would you distinguish Bernhardt? Counsel said his best case here is Bernhardt. I thought Bernhardt was a pretty interesting case. It's our obligation to make sure there's a case in controversy at all steps throughout the way. And we had questions about whether or not the panel had questions about whether or not  And then they, you know, said, well, you know, they could allege a claim for nominal damages. That opportunity. We didn't say, hey, you didn't raise a claim for nominal damages. You're out of here. Your Honor, it's still It's not up to the district court to necessarily calm the record and look for This isn't like one of those. I'm familiar with that. Isn't there that trendy quote that says, you know, we're not looking for truffles. You know, this was just in the complaint. It was right there. Well, it was in their complaint, but seeing that their case was dismissed and having notification to the court that certain defendants had been dismissed based on mootness. Plaintiff's counsel is an experienced attorney. He's well aware of what is in his complaint. He had multiple opportunities to bring this to the court's attention, and he didn't. And the court determined then that the plaintiffs had forfeited their request for nominal damages. Yeah, well, so then the next issue we have is, can it be revived on appeal? And if whether it's waived or forfeited or not brought to the district court's attention, we're now here on appeal. And it's the first time we've seen briefing to the effect that we have a nominal damages claim. You can't dismiss us because the claim is not moot. And we had a funny case, you probably remember, the Arizonans for Official English, in which we said that a very broad remedies clause for all other, you know, damages or relief that the court could grant was enough to actually preserve the nominal damages claim. And that was first brought up on appeal. Now, the Supreme Court reversed because there was a whole problem with the state's immunity from damages, which is a whole other issue. But we did, in the Ninth Circuit, say you could bring this up and that a relief claim, which was far broader than here, where they basically said, we want nominal damages, was enough to revive the claim. What is the county's response to that? Well, you're correct that this court has de novo review, but the plaintiffs, nevertheless, have brought up their request for nominal damages for the first time on appeal before this court. They didn't bring it up to the district court when they had multiple opportunities to do that. So the district court was within its discretion to conclude that they had waived that claim. But I mean, that's one part. Here we are de novo looking at it. Why shouldn't the Ninth Circuit say, given this ambiguity of what was going on and the timing of the famous footnote, why shouldn't we say the nominal damages claim is definitely there in the complaint and go back and, you know, let the chips fall where they may? Well, that would result in the parties litigating a case in 2022 to 2023 and beyond that is far different. The world is far different today than where we were at that time when, you know, we were in a state of emergency. There was a virus that was where little public health officials knew very little about it, and they were doing their best with limited information to protect the public from illness and death. I agree with all that. And of course, that's where we would be looking at the injunction. But if you went back on damages, they would still have to prove a constitutional violation. And your argument is the one you would make, which is there isn't a constitutional violation for all the reasons that you just eloquently said. So I'm not sure litigating the case in 2022-23 really changes the whole import of our nominal damages available for that short period that I questioned Mr. Lee about. Well, it's relevant in the sense that we would be litigating whether there was a during an unprecedented state of emergency caused by a virus that was sickening and killing people, a global pandemic. And much has changed, as I mentioned, in the world. And there is a different legal analysis to apply. And it's a novel legal issue in the sense that we would need to litigate the Second Amendment, the government's right and statutory authority to protect the public during an unprecedented state of emergency. And so — That sounds like a pretty interesting question. Well, it's a — it's an — but the case is moot. It's a — it would — it would be — it's a — it is an interesting question, but the circumstances today obviously are quite different than they were back in 2020. And I didn't hear much from Mr. Lee on whether his — his claims for prospective relief are moot. And I think under Brock, they're — the case is moot. Well, he acknowledged the broad import of Brock, but offered some distinctions, which we'll consider. But that really isn't the question on nominal damages. Remember, in Brock — Can you — Oh, go ahead. Go ahead. Go ahead. As I have read your briefing and listening, is it the case here that you agree with Mr. Lee that, on the law, he's correct, but you're arguing forfeiture, and that's the reason you should prevail? Well, the defendants aren't conceding that the plaintiffs are entitled to nominal damages because there hasn't been a determination that there was a constitutional violation. While it is correct that a claim for nominal damages would keep a case alive, there would still need to be an establishment of a constitutional violation. And that is what I'm saying would need to be — if this court were to reverse and remand, the parties would then be litigating that issue under a drastically different factual and legal landscape. And — The landscape is frozen in time, isn't it? Basically, the orders were issued. Eventually, the orders were lifted. And so the question is — and it may be a legal question. Maybe there's no factual dispute about what happened. I can't say that. But let's just assume that's the situation. Then the question is, would that constitute a violation of the Second Amendment, given the situation back then, which is well laid out in the briefing? So we're not really trying to impose a future landscape on the county. If that were to happen, the district court would be looking at the landscape at the time the orders were issued. And so those facts are frozen in time to some degree. And I'm not — maybe I'm just not understanding the argument as to why this would be a difficult hurdle to overcome to have either a trial or summary judgment on those motions. You know, the court — the parties would be litigating what occurred in 2020. And I think that Your Honor had an interesting question when Mr. Lee was arguing about at what point would their claim, for example, for attorney's fees be cut off, given the temporary nature of the shelter-in-place orders. And when those orders were lifted, we've now been litigating the case for two and a half years. And through no fault of the defendants, then did the district court, sua sponte, dismiss them from the case. They should not have to face the prospect of an exorbitant attorney's fees bill in litigating a protracted civil rights case when the amount at stake is $1. Let me ask you this. In response to Judge Malloy's question, you know, if the — knowing Judge Tiger, if anybody, including plaintiffs or even the defendants, had said they've got a claim for nominal damages, I doubt seriously that he would have dismissed the case. Isn't that — if we were to go along with your position, wouldn't that be a really super-hyper-technical way of saying this case is moved? Right there in the complaint. It is right there in the complaint, Your Honor. But as I had mentioned, the plaintiffs did have multiple opportunities to bring that to the court. And they were facing the prospect of dismissal of their case. And they would have every incentive to bring to their court's attention. Well, he didn't — did he say any place in the discussion — and I look — I don't recall seeing it, but maybe I — you know, there's a lot to read in preparation for all these cases, and I can't always remember. But did he say, you know, this case is moot, I'm going to dismiss the entire case against all these counties? Did Judge Tiger specifically state that? Well, he was requesting at the conclusion of the hearing on the motion for a preliminary injunction that both sides brief the issue of mootness. And again — Well, it could be — you know, he had been thinking what was at stake was the preliminary injunction. So, you know, this claim is moot. We don't need to fuss with this preliminary injunction anymore. But did he say, I'm going to — I'm going to — this case is moot, I'm going to dismiss the whole thing. You're out of here. Goodbye. Did he say that? Not on the — well, he sui sponte dismissed these defendants based on their changing — No, no, no, no, but in the lead-up to the briefing, when he was ordering the briefing and whatnot, he said, now, if I determine this case is moot, I'm dismissing it. You're out of here. He did not say that. I didn't think so. He didn't. He didn't say that. But he was asking the parties to brief the issue of mootness, and the parties had an opportunity to — to brief that issue. And when he sui sponte dismissed the defendants and the order on the preliminary injunction motion, plaintiffs' counsel sought clarification of the intent. And nowhere in that request for clarification was there a mention of the claim for nominal damages. Let me ask you this. You know, I read — we didn't get a chance to really go through Bernhardt, but when I read Bernhardt, one thing that did catch my eye and gave me some pause about all of this is that the court talks a lot — the panel there talks a lot about, well, you know, these were constitutional rights at stake, and we should be cognizant of that and aware of that. And that's — isn't that really what's going on here, too? I mean, you know, these are constitutional rights under the Second Amendment that they were alleging. And, you know, they — the parties, the plaintiffs really believe in those. I mean, they want to protect them. And this just happens to be Second Amendment, but there are due process claims, equal protection claims. And I think all of us take constitutional rights very seriously. The defendants — Government rights. Absolutely. You know, the vindication of a constitutional violation is an important vehicle for everyone. We believe in the Constitution. But here, there were multiple opportunities for the plaintiffs to assert their right to vindicate their alleged constitutional violation. And the district court, in concluding that they had waived it, acted within its discretion. I would respectfully request that this court affirm the district court's order dismissing the defendants. Thank you. Thank you. Thank you, Your Honors. I want to just briefly address the question of my colleagues raising of missed opportunities. The request for clarification that we asked the district court was because the district court issued its order saying, in sort of a broad way, the county defendants are dismissed. And what we were simply trying to do was to get the district court to specify which defendants it was intending to dismiss, because it was ambiguous and unclear from the district court's order. And the defense agreed that that would be a good idea for us to clarify that. And that was the purpose of the request for clarification. It seems to me, if you were worried about your nominal damages, that would be precisely where you would put it up. And we have Alameda County basically getting the green light to go ahead. And in the footnote, they basically say that nominal damages had not been preserved as to the other counties. So even if up to this point there's some ambiguity by the district court as to what the briefing should be, at this point it's on the table. And as I read it, that's not just a missed opportunity. That is almost an affirmative waiver of not doing anything. We now have the order by the court that you have waived or failed to preserve the argument. So why didn't you ask the court or say to the court, no, no, no, we're in the same boat as Alameda? At the time, Your Honor, there was no issue of waiver that wasn't raised until five months later. That's when the district court finally had suggested that the plaintiffs had failed to raise the issue. And that was five months after the fact. But no, it's right in front of, it might be five months after the fact, but it's your opportunity to raise your hand at that point. That's my concern, is that even if we give you the benefit of the doubt all of the earlier ambiguity, now it's just directly on the table. Sure. And, Your Honor. So that's, you know, I have to tell you, I'm finding that a little troubling, but maybe you have a good answer. Just let me be candid. It's a pretty tall order to ask a district court when it's flowing the error onto the plaintiffs by a suggestion of waiver. It's a tall, and clearly there was an error, but the district court is determined to blame the plaintiffs for the error and the inconsistency. It's a tall order to ask a district court to reconsider its order in the absence of new facts and new law. Yeah, but I think you have a record then. You have a record that the court either grants or denies when you make that motion. So I think it's unfair to criticize by saying, I don't want to get in trouble with the judge by asking or at least preserving the record. Right. I mean, I practiced law for 25 years, and I agree that you don't always want to go around asking for motions for reconsideration. But if you think that your client's rights are going down the drain, I think you have an obligation, as Judge Molloy says, to put it on the record. I mean, the district judges don't get mad at you for a written motion, rule on it one or the other. Your Honor, I mean, that wasn't my concern. I'm not concerned about anyone getting angry or anything like that. But again, it's a tall order to ask a district court, especially when you're still litigating this. We're still litigating the issue with Alameda County. We still have a live claim with Alameda County that we're litigating. So to ask the court, saying, well, you know your order of five months ago where you dismissed all those defendants, Your Honor, you really — that wasn't our error. That was your error. I think that's a tall order. In the absence of a real rule under the Federal Rules of Civil Procedure, which would govern motions for reconsideration, it's so ambiguous in the absence of new law or new facts. That would be my explanation to that. But Your Honor's point is well taken. No, I appreciate that. Any other questions? No? Thank you, both counsel, for your argument today, but also for the briefing. It's very well done and very complete. So we appreciate that. The case just argued of Altman v. County of Santa Clara is now submitted and we're adjourned for the morning.
judges: McKEOWN, PAEZ, Molloy